LENGEORGE M. BURNS,

        Plaintiff,

        v.                                Case No. 26-cv-0272-bhl

EMILY PROPSON,
MATTHEW BURNS,
LT. CHRISTOPHER SCHWABB,
BRITTANY BURNS,
RANDALL HEPP,
JESSE UMENTUM,
YANA PUSICH, and
JOHN DOE,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Lengeorge M. Burns, who is currently serving a state prison sentence at Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On April 9, 2026, the Court screened the complaint and ordered Burns to show cause why this action should not be dismissed based on the three-year statute of limitations. On April 22, 2026, Burns explained that he timely filed the case because the statute of limitations was tolled while he exhausted the administrative remedies. Dkt. No. 9; *see Schlemm v. Pizzala*, 94 F.4th 688 (7th Cir. 2024). Based only on the information provided by Burns, it appears that this action is timely. However, Defendants are advised that this decision does not preclude them from raising the statute of limitations as an affirmative defense. The Court will screen the complaint, as required by 28 U.S.C. §1915A.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or

malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

Burns asserts that Warden Randell Hepp, Deputy Warden Emily Propson, and Security Director Yana Pusich retaliated against him because, at some undefined time, he refused to provide information about how cellphones were being introduced into the prison. According to Burns, because of his refusal to become an informant, Deputy Warden Propson ordered hearing officers Lt. Matthey Burns and Lt. Christopher Schwabb to find him guilty of baseless conduct reports and impose significantly harsher penalties than other prisoners received, delayed approving his inclusion in a special program for prisoners in the restrictive housing unit, and refused him re-entry into a program to earn a college degree.

With regard to the conduct reports, on September 21, 2022, Burns was placed in temporary lockup pending an investigation into a fight between his cellmate and another inmate, which Burns

2

states he was trying to break up. During the investigation into the fight, officers allegedly found contraband belonging to Burns' cellmate. Burns received a conduct report for possessing contraband on September 28, 2022. At the disciplinary hearing on October 5, 2022, Burns' cellmate acknowledged that the items were his. Nevertheless, Lt. Burns found Burns guilty for possessing some (though not all) of the contraband. On January 27, 2023, Warden Hepp reversed the guilty finding on the conduct report for possession of contraband, stating it could not be determined that it belonged to Burns.

Burns was not immediately given a separate conduct report for the fight, so at his hearing for possessing contraband, he asked Lt. Burns for an update. Lt. Burns told him that the conduct report about the fight would likely have to be dismissed because it had not been delivered to Burns within the timelines set forth in §DOC 303.80(1). The next day, Burns received a conduct report about the fight in the mail. Burns asserts that the conduct report stated it had been served more than a week earlier, on September 22, 2022 by Officer Nathan Pach. Burns was informed by his staff advocate Jesse Umentum that the hearing would be on October 10, 2022. Burns completed the form requesting that his cellmate and Pach be allowed to testify. Burns asserts that his cellmate would have confirmed Burns was only trying to stop the fight and that Pach would confirm that he did not timely deliver the conduct report to Burns. According to Burns, Pach had informed him that someone had forged his name on the conduct report. Burns later learned from an officer that Umentum had backdated and signed Pach's name on the conduct report on October 7, 2022.

Lt. Schwabb was the hearing officer at the October 10, 2022 hearing on the conduct report about the fight. Burns raised the issue of the conduct report not being timely served, but Lt. Schwabb said it did not matter, and he should raise the issue on appeal. When Burns asked about his witnesses, Lt. Schwabb stated that Burns had not filled out the form correctly, and the witnesses were irrelevant. Burns asserts that he explained he was only trying to stop the fight, but in his written summary, Lt. Schwabb twisted his words to make it sound like he was involved. Lt. Schwabb found Burns guilty and gave him 210 days in disciplinary segregation, even though one of the inmates who had been fighting received only 60 to 90 days and the other inmate's conduct report was dismissed because it had not been timely delivered to him. When questioned by other inmates why he had given Burns so much time, Lt. Schwabb stated that he had no choice and it was out of his hands. Burns explains that he later talked to Lt. Schwabb, who explained he had been directed to find Burns guilty and give him 210 days in segregation. Burns explains that

3

Warden Hepp eventually granted him a new hearing, but the hearing was a "sham." At the November 10, 2022 re-hearing Burns was not allowed to call his witnesses and he had no advocate, but Burns was let out of segregation that same day. Burns believes that the conduct report should have been dismissed.

Burns was in the restricted housing unit in January 2023 (perhaps for the contraband conduct report). He explains that, due to good behavior and time served, Officer Gripentrog had recommended him for a special program, but, for reasons unknown to Gripentrog, Burns had been removed from the list. On January 20, 2023, Burns filed an inmate complaint about the ongoing harassment and retaliation he believed he was facing. A few days later, he was admitted to the special program.

Deputy Warden Propson called Burns to her office, and she and Burns talked about how she took him off the special program list, directed Lt. Schwabb to find him guilty of the conduct report and give him 210 days in segregation, and put him on administrative confinement because he had been found with a cellphone. Burns asserts that he pointed out that many inmates were found with cellphones, but she explained that she believed he had information about where the phones were coming from.

### THE COURT'S ANALYSIS

Burns first asserts that Deputy Warden Propson, Lt. Burns, Lt. Schwabb, and staff advocate Umentum violated his due process rights when he was found guilty of two conduct reports despite clear evidence that he was innocent of both charges. "To succeed on a due process claim stemming from a prison disciplinary proceeding, an inmate must demonstrate (1) a constitutionally protected liberty interest and (2) deficient procedures attendant to the deprivation of that interest." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024).

It is a close call whether Burns has sufficiently alleged that he possessed a constitutionally protected liberty interest. It appears that, despite initially being disciplined with 210 days in segregation, Burns remained in segregation for only a few months before the Warden intervened. Under Seventh Circuit precedent, standing alone, any stay in segregation for less than six months "is not enough to implicate a liberty interest that triggers due process rights." *Id*. But Burns also alleges that the conditions in segregation were harsh and nearly caused him to have a mental breakdown. He states that there was no clock, so he did not know when to do his daily prayers and that officers repeatedly tampered with his mail. Although these conditions do not appear to

4

be atypical or significant hardships, at this early stage and for purposes of screening only, Burns has sufficiently alleged that he possessed a constitutionally protected liberty interest when he was disciplined with segregation.

The Court can also reasonably infer that the procedures attendant to the deprivation of that protected liberty interest were deficient based on Burns' allegations that Umentum backdated and forged a signature on one of the conduct reports and Lt. Burns and Lt. Schwabb implied that they were directed by Deputy Warden Propson to find Burns guilty even though there was clear evidence of his innocence and/or the conduct reports had procedural defects. *See Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024) (St. Eve, J., concurring, joined by Kirsch, J., concurring) (explaining that due process entitles a prisoner to an impartial decisionmaker during a prison disciplinary hearing even under the informal due process standard). Burns may therefore proceed on a due process claim against Deputy Warden Propson, Lt. Burns, Lt. Schwabb, and staff advocate Umentum.

Burns does not, however, state a claim against Brittany Burns, Warden Hepp, Security Director Pusich, or John Doe based on allegations that they did not intervene in the due process violations. The Court cannot reasonably infer from Burns' allegations that these individuals were personally involved in directing the decisions of the hearing officers. It appears that Burns complained to these individuals about what he believed to be others' wrongdoing, but "[p]rison officials do not have a free-floating obligation to put things to rights . . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Burns appealed the conduct report decisions to Warden Hepp, who ordered a new hearing on one of the conduct reports and overturned the guilty decision on the other. Accordingly, the Court cannot reasonably infer that he was not an impartial decision maker or that he turned a blind eye to wrongdoing. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) (holding that a defendant is liable for damages under §1983 only if he was personally responsible for the deprivation of a constitutional right, meaning that the deprivation occurred at the defendant's behest or with his knowledge and consent).

Burns also does not state a claim against Deputy Warden Propson based on allegations that she refused to readmit him to a college degree program and delayed his entry into a special program for prisoners in segregation. It has long been recognized that denial of access to educational or

5

work programs does not infringe on a protected liberty interest. *See Zimmerman v. Tribble*, 226 F.3d 568, 572-73 (7th Cir. 2000).

And, finally, Burns fails to state a claim based on assertions that Deputy Warden Propson retaliated against him because he refused to provide her with information about how cellphones were entering the prison. To plead a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Burns fails to satisfy the first prong. As recently noted, it is not clearly established in the Seventh Circuit that a prisoner has a protected right "not to snitch." *See Nelson v. Stevens*, No. 18-cv-238, 2020 WL 2112270, at *15 (W.D. Wis. May 4, 2020) (citing cases); *Martin v. Neal*, 21-cv-860, 2022 WL 581013, at *2-3 (N.D. Ind. Feb. 24, 2022). Accordingly, the Court cannot reasonably infer that he engaged in activity protected by the First Amendment.

**IT IS THEREFORE ORDERED** that Burns fails to state a claim against Brittany Burns, Randall Hepp, Yana Pusich, and John Doe, so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Burns' complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Emily Propson, Matthew Burns, Lt. Christopher Schwabb, and Jesse Umentum.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Emily Propson, Matthew Burns, Lt. Christopher Schwabb, and Jesse Umentum shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated at Milwaukee, Wisconsin this 6th day of May, 2026.

s/ *Brett H. Ludwig*  
BRETT H. LUDWIG  
United States District Judge

6