UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LENGEORGE M. BURNS,

Plaintiff,

v.

Case No. 26-cv-0272-bhl

EMILY WESTOVER, née PROPSON,
MATTHEW BURNS,
CHRISTOPHER SCHWAB,
RANDALL HEPP,
JESSE UMENTUM, and
YANA PUSICH,

Defendants.

**DECISION AND ORDER**

Plaintiff Lengeorge Burns, who is currently serving a state prison sentence at the Racine Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On May 6, 2026, the Court screened the complaint and allowed Burns to proceed on a due process claim against Deputy Warden Emily Propson,[1] Lt. Matthew Burns, Lt. Christopher Schwab, and staff advocate Jesse Umentum based on allegations that, at Deputy Warden Propson's direction, Burns was found guilty of two conduct reports despite clear evidence that he was innocent of both charges. The Court also concluded that Burns failed to state a claim against Warden Randall Hepp, Security Director Yana Pusich, and others because the Court could not reasonably infer that they were personally involved in the alleged violation. Finally, the Court concluded that Burns failed to state a claim that Deputy Warden Propson retaliated against him after he refused to provide her with information because refusing "to snitch" is not activity protected by the First Amendment. Dkt. No. 10.

On June 23, 2026, Defendants filed a motion to dismiss. Dkt. No. 13. In a notice and order, the Court informed Burns that he could respond to the motion or file an amended complaint

[1] Burns uses Deputy Warden Propson's maiden name rather than her married name (Westover) throughout his amended complaint. To avoid confusion, the Court will do the same.

curing the deficiencies identified in the motion. Dkt. No. 18. On August 18, 2026, Burns filed an amended complaint, and a few days later, Defendants filed a second motion to dismiss or, in the alternative, a motion asking the Court to screen the amended complaint as required by 28 U.S.C. §1915A. Dkt. Nos. 22, 23. For the reasons explained below, the Court will deny the first motion to dismiss as moot, grant the motion to screen the amended complaint, and deny the second motion to dismiss.

## BACKGROUND

Burns explains that he was found in possession of a cellphone on October 11, 2021. He was then questioned by Lt. Burns and Deputy Warden Propson about who gave him the phone. According to Burns, Deputy Warden Propson informed him that she could make his time at Waupun Correctional Institution much easier or much harder. Burns asserts that he exercised his "Fifth Amendment right" to refuse to answer. He was given 120 days in segregation for possessing the cellphone. Burns asserts that, following his refusal to give them information, "Defendants engaged in a continuing pattern of retaliation." Dkt. No. 22 at 4-5.

Burns asserts that, first, a few months after he was out of segregation, Deputy Warden Propson failed to take the necessary steps for Burns to re-enroll in college courses offered through Trinity International University. Deputy Warden Propson allegedly stated that Burns would never get back into the college program as long as she was there, and "he knows why." Dkt. No. 22 at 5. Next, on September 21, 2022, nearly a year after the cellphone incident, Burns was placed on temporary lockup pending an investigation into a fight between his cellmate and another inmate, for which Burns was alleged to have acted as the lookout. *See* Dkt. No. 15-1 at 1.[2] According to Burns, he received two conduct reports in connection with this incident.

The first conduct report related to Burns'ss alleged possession of intoxicants and a weapon, which were found in his cell when he was moved to temporary lockup. *See* Dkt. No. 15-2. Burns alleges that an October 5, 2022 disciplinary hearing was conducted on this conduct report and his cellmate testified that the items belonged to him. Lt. Burns nevertheless found Burns guilty of possessing intoxicants and gave him thirty days in segregation. Burns appealed the decision, and on January 27, 2023, Warden Hepp reversed the decision. Dkt. No. 15-2 at 3-4. According to

---

[2] Burns references two conduct reports he received in connection with this incident. Defendants provide copies of the conduct report packets in support of their motion to dismiss. The Court may consider the conduct reports that Burns references throughout his amended complaint. *See Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021).

Burns, Warden Hepp stated that there was no evidence to support a conclusion that the items belonged to Burns. Dkt. No. 22 at 12.

The second conduct report involved Burns acting as a lookout while his cellmate entered another inmate's cell to fight him. Dkt. No. 15-1. Although the conduct report indicates that an officer delivered it to Burns on September 22, 2022, Burns asserts that the officer confirmed that his signature had been forged and backdated. According to Burns, the conduct report was actually signed by Umentum, his staff advocate, on October 6, 2022 and delivered to Burns on October 7, 2022. Burns asserts that the conduct report should therefore have been dismissed because it was not timely signed and delivered under the regulations. The hearing was scheduled for October 10, 2026, and Burns completed the form requesting that his cellmate and the officer who said his signature had been forged be allowed to testify. Dkt. No. 22 at 7-12.

Lt. Schwab was the hearing officer at the October 10, 2022 hearing. Burns asserts that he raised the issue of the conduct report not being timely served, but Lt. Schwab said it did not matter, and he should raise the issue on appeal. Lt. Schwab also denied Burns's request for witnesses. Burns asserts that he explained to Lt. Schwab that he was only trying to stop the fight, but in his written summary, Lt. Schwab twisted his words to make it sound like he was involved. Lt. Schwab found Burns guilty and gave him 210 days in segregation, even though one of the inmates who had been fighting received only 60 days and the other inmate's conduct report was dismissed because it had not been timely delivered to him. When questioned later that day by other inmates about why he had given Burns so much time, Lt. Schwab allegedly stated that he had no choice and it was out of his hands. Dkt. No. 22 at 9-10.

Burns appealed, and on October 27, 2022, Warden Hepp decided that a new disciplinary hearing was warranted because "[t]he record lack[ed] any reflection that an approved witness was at the hearing and testified." Dkt. No. 15-1 at 8. The re-hearing occurred on November 10, 2022, and Lt. Burns was the hearing officer. Burns asserts that Lt. Burns told him he did not need to call any witnesses because he was going to let him out of segregation that same day. Dkt. No. 22 at 14. In his decision, Lt. Burns stated that based on the officer's statements in the conduct report and the video showing Burns holding open the cell door to allow his cellmate to enter, he found Burns guilty of aiding and abetting in the assault. Burns was given sixty days of segregation. Dkt. No. 15-1 at 5. Burns explains that, while in segregation, the clock near his cell was taken down

so he did not know what time to do his prayers. He also states that staff tampered with his mail. Dkt. No. 22 at 16.

Finally, Burns asserts that, in January 2023, he was in segregation for unrelated reasons. He explains that, due to good behavior and time served, Officer Gripentrog had recommended him for a special program, but for reasons unknown to Officer Gripentrog, Burns had been removed from the list. On January 16, 2023, Burns submitted an inmate complaint about the ongoing harassment and retaliation he believed he was facing from "a WCI staff member in a supervisory role." A few days later, he was admitted to the special program. Dkt. No. 22 at 15-16.

On January 20, 2023, Deputy Warden Propson called Burns to her office, and they allegedly talked about how she took him off the special program list and directed Lt. Schwab to find him guilty of the conduct report and give him 210 days in segregation. Burns asserts that she also asked him if he was now willing to tell her how he got his phone into the prison. Burns asserts that he pointed out that many inmates were found with cellphones, but she allegedly stated that she believed he had information about where the phones came from. Dkt. No. 22 at 16-17.

## Screening of the Amended Complaint

Defendants have filed two motions to dismiss based on the statute of limitations, and in the alternative, a motion for the Court to screen the amended complaint. The Court will first screen the amended complaint and then resolve the motions to dismiss in light of the claim that survives screening. The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

## THE COURT'S ANALYSIS

Burns first asserts that Defendants violated his due process rights when he was found guilty of two conduct reports despite clear evidence that he was innocent of both charges. "To succeed on a due process claim stemming from a prison disciplinary proceeding, an inmate must demonstrate (1) a constitutionally protected liberty interest and (2) deficient procedures attendant to the deprivation of that interest." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024). With the additional information in the amended complaint and supporting documents, it is clear that Burns fails to state a due process claim.

Burns received thirty days in segregation for possessing intoxicants and sixty days in segregation for serving as a lookout during his cellmate's fight with another inmate.[3] Under Seventh Circuit precedent, any stay in segregation for less than six months, standing alone, "is not enough to implicate a liberty interest that triggers due process rights." *Ealy*, 109 F.4th at 964. A short stay in segregation potentially implicates a liberty interest only if the conditions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). As to the conditions in segregation, Burns alleges only that the clock near his cell was removed and that officers "tampered with his mail." These conditions, which are just as capable of existing in the general population, were neither atypical nor so extreme as to impose a significant hardship on Burns. Because Burns was not deprived of a protected liberty interest, he was not owed due process. Accordingly, he fails to state a due process claim in connection with the two conduct reports he received.

Burns also does not state a claim against Deputy Warden Propson based on allegations that she refused to readmit him to a college degree program and delayed his entry into a special program for prisoners in segregation. It has long been recognized that denial of access to educational or work programs does not infringe on a protected liberty interest. *See Zimmerman v. Tribble*, 226 F.3d 568, 572-73 (7th Cir. 2000).

Next, Burns alleges that Deputy Warden Propson engaged in multi-year campaign of harassment because he refused to provide her with information about how cellphones were

---

[3] While Burns initially received 210 days in segregation, that disposition was overturned and he served only 60 days. Accordingly, Burns suffered no harm from any alleged misconduct in connection with the original disposition. *See Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019) ("In order to succeed in a § 1983 suit, a plaintiff must establish not only that a state actor violated his constitutional rights, but also that the violation caused the plaintiff injury or damages.").

entering the prison. To plead a retaliation claim, a plaintiff must allege that (1) he engaged in protected activity; (2) he suffered a deprivation that would likely deter protected activity in the future; and (3) the protected activity was at least a motivating factor in the defendants' decision to take the retaliatory action. *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (citations omitted).

As the Court explained in the original screening order, it is not clearly established in the Seventh Circuit that a prisoner has a protected right "not to snitch." *See Nelson v. Stevens*, No. 18-cv-238, 2020 WL 2112270, at *15 (W.D. Wis. May 4, 2020) (citing cases); *Martin v. Neal*, 21-cv-860, 2022 WL 581013, at *2-3 (N.D. Ind. Feb. 24, 2022). Burns now alleges that he stayed silent, not to avoid incriminating others, but to avoid incriminating himself. He states that he "exercised his fifth amendment right by refusing to answer because he felt doing so would have required him to provide information that could have incriminate[d] himself, exposed him to criminal prosecution or more discipline." Dkt. No. 22 at 4. He goes on to explain that "[i]t is a class I felony for inmates to deliver or possess cellphones in prison." *Id.*

"The Fifth Amendment gives a person the right not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. This right applies in the prison disciplinary context, and prison officials may violate a prisoner's right against self-incrimination if a prisoner's silence alone results in punishment of the kind capable of compelling waiver of the right." *Vermillion v. Levenhagen*, 604 F. App'x 508, 512 (7th Cir. 2015) (citations omitted).

The Court acknowledges the convenience of Burns' current characterization of his refusal to provide the requested information. After all, according to Burns, Deputy Warden Propson never accused him of being involved with the smuggling of phones into the prison; she only suggested that he might have information about who was. And Burns does not appear to dispute that he possessed a cellphone—he was found guilty of that charge and received 120 days in segregation. Accordingly, it is not clear how Burns might have incriminated himself by answering Deputy Warden Propson's questions. Nevertheless, at this early stage and construing all reasonable inferences in Burns's favor, the Court concludes that Burns has sufficiently alleged that for years, Deputy Warden Propson took several steps to punish him for invoking is right to avoid self-incrimination.

As explained above, none of the discrete acts of alleged punishment states a claim on which relief can be granted, nor can the Court reasonably infer that any other Defendant was involved in

her alleged "campaign of harassment." While Burns alleges that others followed Deputy Warden Propson's directives, the Court cannot reasonably infer that they did so to punish Burns for his silence. In any event, it appears that Burns exhausted the available administrative remedies *only* on a claim of retaliation against Deputy Warden Propson. *See* Dtk. No. 1-1 at 1 (identifying the one issue of his inmate complaint as having "been and [] currently being harassed and retaliated against by a WCI staff member in a supervisory role").

**MOTIONS TO DISMISS**

According to Deputy Warden Propson,[4] Wisconsin's three-year statute of limitations bars Burns's claim against her. She notes that Burns alleges that he first learned of her efforts to punish him for his silence on January 5, 2023. Burns signed his grievance on January 16, 2023, Dkt. No. 1-1 at 1, and the parties agree that the administrative process was complete on February 22, 2023. Burns filed this lawsuit on February 18, 2026. According to Deputy Warden Propson, the statute of limitations was tolled for 38 days—from January 16, 2023 (the day Burns submitted his grievance) through February 22, 2023 (the day the process was complete). Accordingly, assuming as Defendants do that Burns' claim accrued on January 5, 2023, the statute of limitations ran on February 12, 2026, about a week before Burns brought this case.

Burns, however, highlights *Schlemm v. Pizzala*, 94 F.4th 688 (7th Cir. 2024), which acknowledges that the Seventh Circuit's "precedent is inconsistent on whether the gap between claim accrual and grievance filing is included in the tolling period." *Id.* at 690. The majority opinion acknowledges that this question needs to be addressed but left it for another day. Perhaps believing there is no time like the present, Judge David Hamilton, in a concurring opinion, endeavored to "help clear up some confusion caused by loose language in prior opinions and orders" and to "provide district courts some guidance" on the interplay between state tolling statutes and the federal statute requiring prisoners to exhaust the available administrative remedies before they may file a lawsuit. According to Judge Hamilton, based on the plain language of Wisconsin's tolling statute, the statute of limitations is tolled from the time the claim accrues (not from the time the grievance is filed) through the completion of the grievance process.

As Deputy Wardon Propson highlights, Judge Hamilton's concurring opinion is not binding precedent, but the Court finds its reasoning persuasive and will therefore adopt it.

---

[4] Lt. Burns, Schwab, Umentum, and Deputy Warden Propson filed the motions to dismiss, but as explained, the amended complaint states a claim only against Deputy Warden Propson, so she is now the only Defendant.

Accordingly, the Court concludes the statute of limitations was tolled for 48 days—from January 5, 2023 (the day Burns's claim accrued) through February 22, 2023 (the day the exhaustion process was complete). The statute of limitation therefore ran on February 22, 2026. Because Burns timely brought this case on February 18, 2026, the motion to dismiss based on the statute of limitations will be denied.

**IT IS THEREFORE ORDERED** that Burns fails to state a claim against Matthew Burns, Christopher Schwab, Randall Hepp, Jesse Umentum, and Yana Pusich, so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that Defendants' first motion to dismiss (Dkt. No. 13) is **DENIED** as moot, Defendants' motion to screen the amended complaint (Dkt. No. 23) is **GRANTED**, and Defendants' second motion to dismiss (Dkt. No. 23) is **DENIED**.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Emily Westover, née Propson shall file a responsive pleading to the amended complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated at Milwaukee, Wisconsin this 5th day of November, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
Chief United States District Judge